BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
LESLIE E. HURST (178432)
THOMAS J. O'REARDON II (247952)
600 B Street, Suite 1550
San Diego, CA 92101
Telephone: (619) 338-1100
Facsimile: (619) 338-1101
tblood@bholaw.com
lhurst@bholaw.com
toreardon@bholaw.com

BEASLEY, ALLEN, CROW,
  METHVIN, PORTIS & MILES, P.C.
W. DANIEL MILES, III
  (admitted *Pro Hac Vice*)
WILLIAM E. HOPKINS, JR.
  (admitted *Pro Hac Vice*)
218 Commerce Street
Post Office Box 4160
Montgomery, AL 36104
Telephone: (334) 269-2343
Facsimile: (334) 954-7555
Dee.Miles@BeasleyAllen.com
Bill.Hopkins@BeasleyAllen.com

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| AMANDA OBNEY, On Behalf of Herself, All Others Similarly Situated and the General Public,<br><br>Plaintiff,<br><br>v.<br><br>TACO BELL CORPORATION,<br><br>Defendant. | Case No.: 8:11-CV-00101-DOC(FFMx)<br><br>PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS<br><br>Date: April 25, 2011<br>Time: 8:30 a.m.<br>Judge: Honorable David O. Carter<br>Courtroom: 9D<br>Date Filed: January 19, 2011<br>Trial Date: None Set |

BLOOD HURST & O'REARDON, LLP

TABLE OF CONTENTS

Page

I.      Introduction .................................................................................................... 1

II.     Statement of the Case .................................................................................... 3

III.    Taco Bell Has Not Met Its Burden ................................................................ 5

IV.     Argument ....................................................................................................... 6

        A.      The Complaint Meets Rule 8(a)'s Plausibility Standard.................... 6

        B.      The Complaint Satisfies Rule 9, to the Extent Applicable................ 9

                1.      Rule 9 Does Not Apply ........................................................... 9

                2.      Regardless, the Complaint Meets Rule 9(b)
                        Particularity ......................................................................... 10

        C.      Taco Bell Does Not Sell "Beef" or "Ground Beef" as Defined
                by the USDA Or Anyone Else .......................................................... 13

V.      Conclusion .................................................................................................. 15

BLOOD HURST & O'REARDON, LLP

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ashcroft v. Iqbal,*
   _ U.S. _, 129 S. Ct. 1937 (2009)...................................................................6, 8

*Bassett v. Ruggles,*
   No. CV-F-09-528, 2009 U.S. Dist. LEXIS 83349
   (E.D. Cal. Sept. 14, 2009).............................................................................8

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007).......................................................................................6

*Bly-Magee v. California,*
   236 F.3d 1014 (9th Cir. 2001) .....................................................................10

*Broam v. Bogan,*
   320 F.3d 1023 (9th Cir. 2003) .......................................................................6

*Cahill v. Liberty Mut. Ins. Co.,*
   80 F.3d 336 (9th Cir. 1996) ...........................................................................6

*Chacanaca v. The Quaker Oats Co.,*
   No. C 10-0502 RS, 2010 U.S. Dist. LEXIS 111981
   (N.D. Cal. Oct. 14, 2010)....................................................................... 11-12

*Comm. on Children's Television, Inc. v. Gen. Foods Corp.,*
   35 Cal. 3d 197 (1983) ..................................................................................12

*Day v. AT&T Corp.,*
   63 Cal. App. 4th 325 (1998) ..........................................................................9

*Eminence Capital, LLC v. Aspeon, Inc.,*
   316 F.3d 1048 (9th Cir. 2003) .....................................................................15

*Fed. Sav. & Loan Ins. Corp. v. Musacchio,*
   695 F. Supp. 1053 (N.D. Cal. 1988).............................................................11

*Foodcomm Int'l v. United States,*
   914 F. Supp. 548 (Ct. Int'l Trade 1995) ......................................................13

BLOOD HURST & O'REARDON, LLP

*In re Tobacco II Cases,*
   46 Cal. 4th 298 (2009) ............................................................9, 12

*Johns v. Bayer Corp.,*
   No. 09CV1935, 2010 U.S. Dist. LEXIS 10926
   (S.D. Cal. Feb. 9, 2010) ...............................................................9

*Kowalsky v. Hewlett-Packard Co.,*
   No. 10-CV-02176-LHK, 2010 U.S. Dist. LEXIS 131711
   (N.D. Cal. Dec. 13, 2010) ...........................................................12

*Kwikset Corp. v. Superior Court,*
   51 Cal. 4th 310 (2011) ..................................................................1

*Marolda v. Symantec Corp.,*
   672 F. Supp. 2d 992 (N.D. Cal. 2009) ...........................................8

*McKell v. Washington Mutual, Inc.,*
   142 Cal. App. 4th 1457 (2006) ....................................................15

*Morey v. NextFoods, Inc.,*
   No. 10 CV 761, 2010 U.S. Dist. LEXIS 67990
   (S.D. Cal. June 7, 2010)................................................................6

*Morgan v. AT&T Wireless Servs., Inc.,*
   177 Cal. App. 4th 1235 (2009) ..........................................12, 14-15

*N. Am. Processing Co. v. United States,*
   56 F. Supp. 2d 1174 (Ct. Int'l Trade 1999) .................................13

*Peviani v. Natural Balance, Inc.,*
   No. 10-CV-2451-H (BGS), 2011 U.S. Dist. LEXIS 18110
   (S.D. Cal. Feb. 24, 2011) ......................................................10, 11

*Sanchez v. Aviva Life & Annuity Co.,*
   No. Civ. S-09-1454, 2010 U.S. Dist. LEXIS 64264
   (E.D. Cal. June 28, 2010)..........................................................6, 8

*Sanderson v. HCA–The Healthcare Co.,*
   447 F.3d 873 (6th Cir. 2006) ......................................................10

*Sandisk Corp. v. LSI Corp.,*
   No. C 09-02737 WHA, 2009 U.S. Dist. LEXIS 93191
   (N.D. Cal. Sept. 18, 2009) ............................................................8

BLOOD HURST & O'REARDON, LLP

BLOOD HURST & O'REARDON, LLP

*Shroyer v. New Cingular Wireless Servs., Inc.,*
    606 F.3d 658 (9th Cir. 2010) ..................................................................10

*Spiegler v. Home Depot U.S.A., Inc.,*
    552 F. Supp. 2d 1036 (C.D. Cal. 2008) ...............................................10

*Vasquez v. Los Angeles County,*
    487 F.3d 1246 (9th Cir. 2007) ..................................................................6

*Von Koenig v. Snapple Beverage Corp.,*
    713 F. Supp. 2d 1066 (E.D. Cal. 2010) ...............................................11

*Warshaw v. Xoma Corp.,*
    74 F.3d 955 (9th Cir. 1996) ....................................................................10

*Williams v. Gerber Prods. Co.,*
    552 F.3d 934 (9th Cir. 2008) ...........................................................1, 6, 9

**STATUTES, RULES & REGULATIONS**

21 U.S.C.
    §602..................................................................................................................15

Cal. Business & Professions Code
    §17200...............................................................................................................5

Cal. Civil Code
    §1750..................................................................................................................5

Cal. Food & Agricultural Code
    §18691.............................................................................................................15

Cal. Health & Safety Code
    §110395...........................................................................................................14
    §110398...........................................................................................................14
    §110660...........................................................................................................14

Fed. R. Civ. P.
    Rule 8 .....................................................................................................2, 7, 10
    Rule 8(a) ......................................................................................................6, 8
    Rule 8(a)(2) ......................................................................................................6
    Rule 9 .....................................................................................................2, 4, 9
    Rule 9(b) ................................................................................................*passim*
    Rule 12(b)(6)..................................................................................................1, 5

1

**B**LOOD **H**URST & O'**R**EARDON, LLP

9 C.F.R.
  §303.1(f)................................................................................13
  §317.400(b)............................................................................13
  §381.500(b)............................................................................13

**SECONDARY AUTHORITY**

USDA Food Standards and Labeling Policy Book (May 2003)
  p. 160................................................................................4, 14

v

1    Plaintiff Amanda Obney, on behalf of herself and all others similarly
2  situated, respectfully submits this memorandum in opposition to Taco Bell
3  Corporation's ("Taco Bell") Motion to Dismiss the Complaint Pursuant to
4  Federal Rules of Civil Procedure 12(b)(6).

5  ## I.    INTRODUCTION

6    Taco Bell falsely represents to consumers, in the advertising, naming and
7  labeling of its products, that the meat filling in its "seasoned beef" and "seasoned
8  ground beef" tacos and burritos is actually just beef and seasoning.  In reality,
9  these foods are made of a substance known and labeled in the food industry as
10  "taco meat filling," that is comprised of a variety of non-meat substances,
11  including binders and fillers, with beef being one ingredient.  As the California
12  Supreme Court recently affirmed:

13    Simply stated: labels matter.  The marketing industry is based on the
14    premise that labels matter, that consumers will choose one product
15    over another similar product based on its label.

16  *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 328 (2011).[1]

17    In its motion to dismiss, Taco Bell does not dispute the factual allegations
18  that containers shipped to its stores are labeled "Taco Meat Filling," that its
19  "beef" products are actually filled with "taco meat filling," or that "taco meat
20  filling" is not the equivalent of beef.  Instead, it baldly asserts that "[t]here is
21  nothing deceptive, false or misleading about Taco Bell's advertising."[2]  Whether
22  Taco Bell's advertising is likely to deceive a reasonable consumer is a "question
23  of fact" not properly resolved in a motion to dismiss.  *Williams v. Gerber Prods.
24  Co.*, 552 F.3d 934, 938-39 (9th Cir. 2008).

---

25  [1]    Citations are omitted and emphasis is added throughout unless otherwise
26  noted.

27  [2]    Def's Mem. at 1.  "Def's Mem." refers to Notice of Motion and Motion to
28  Dismiss Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b); Memorandum
of Points and Authorities, filed March 1, 2011, D.E. 6.

BLOOD HURST & O'REARDON, LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BLOOD HURST & O'REARDON, LLP

In seeking dismissal, therefore, Taco Bell argues that the Court should not credit any allegations based on information and belief, and that plaintiff's allegations do not meet either Rule 8 or Rule 9(b) standards.  Under Rule 8, allegations based on information and belief are entitled to the same presumption of truth and reasonable inferences to determine whether the allegations are plausible on their face.  Under Rule 9(b), allegations based on information and belief satisfy the particularity requirement if they are accompanied by a statement on which the belief is founded.  Plaintiff's complaint meets both Rule 8's plausibility standard and Rule 9's particularity standard because plaintiff specifies the advertising statements that she challenges as being deceptive, factually details why the statements are deceptive, and alleges who made the deceptive statements, where, and to whom.  Taco Bell cannot reasonably contend that it does not have fair notice of plaintiff's claims with particularity sufficient to allow it to prepare an answer.

Next, in an attempt to recast plaintiff's allegations, Taco Bell also seeks dismissal of the complaint because it contends that its labels and advertisements are not subject to USDA requirements concerning beef.  Taco Bell misses the point.   Plaintiff does not allege a cause of action for violation of USDA regulations.  Rather, plaintiff alleges that it is deceptive to name or label its tacos and burritos as "beef" when the substance with which they are filled is taco meat filling, not "beef" as reasonably defined, including as defined by the USDA. Tellingly, the USDA definition of "beef" is less stringent than the common sense, dictionary definition of "beef," yet Taco Bell implicitly concedes its taco meat filling cannot even meet the less stringent definition.

BLOOD HURST & O'REARDON, LLP

## II.   STATEMENT OF THE CASE

Taco Bell tells consumers that its beef foods are filled with "seasoned beef" or "seasoned ground beef."   ¶9.[3]   Plaintiff alleges that consumers' reasonable expectation is that food products proclaimed to be filled with "seasoned beef" or "seasoned ground beef" will in fact be filled with beef that has been seasoned. ¶¶5, 16.   Indeed, Taco Bell's chicken and carne asada steak products are in fact chicken and carne asada steak.   ¶8.   In contrast, Taco Bell's "seasoned beef" foods are filled with a substance known in the food industry as "taco meat filling." ¶¶9, 12, 19.

Taco meat filling is not simply beef that is flavored with seasoning.   ¶1. Taco Bell's "seasoned beef" tacos are filled with water, isolated oat product, wheat oats, soy lecithin, silicon dioxide (an anti-caking agent), maltodrextrin, an anti-dusting agent, autolyzed yeast extract, sugar, cocoa powder (processed with alkali), modified corn starch, sodium phosphate, potassium phosphate, and potassium lactate, in addition to beef and items Taco Bell identifies as "seasonings" (some of which are known and some of which are not). ¶¶15, 19.

These added ingredients are not seasonings.   They are added as binders and fillers to increase the volume of the filling and to imitate the texture and "mouth feel" of actual ground beef.   ¶10.   Plaintiff alleges that advertising tacos and burritos as being filled with "beef" or "ground beef" when they are actually filled with "taco meat filling" is false and deceptive advertising.   ¶¶1, 10, 11, 13, 15.   Consumers have an expectation (and a legal right) to be told the truth about the content of the food items they are purchasing.   If a consumer wants to eat an all beef product, then a consumer has a right to rely on a representation that a product is all beef.   ¶5.   Further, consumers should not be told food items consist of only a certain ingredient, when that product actually contains other substances.

---

[3]   All "¶" references are to the Class Action Complaint filed January 19, 2011, D.E. 1.

¶¶5, 15. Additionally, because of social, religious and medical beliefs, many consumers choose to not eat or to limit the amount of certain substances they eat. For many, it is not a matter of choice. Taco Bell's taco meat filling contains a number of ingredients that are allergens or cause other serious and life threatening reactions in a significant portion of the population.

Just as Taco Bell's use of the term "seasoned beef" or "seasoned ground beef" does not conform to consumers' reasonable expectations that seasoned beef is comprised of beef and seasonings, it also does not conform to ordinary definitions of beef. An example of an ordinary definition of beef is the Merriam-Webster dictionary that defines beef as "the flesh of an adult domestic bovine (as in steer or cow) used as food." ¶16. Another definition of beef is the USDA definition that defines beef as "flesh of cattle." ¶17. The USDA defines ground beef – and Taco Bell challenges only the use of this definition as a standard upon which to test the veracity of its advertising – as "chopped fresh and/or frozen beef with or without seasoning and without the addition of beef fat as such," that cannot contain more than 30% fat and cannot contain "added water, phosphates, binders or extenders." *Id.*

The USDA recognizes that when water, phosphates, extenders and binders are added to beef, like those added by Taco Bell, a different product, known as "taco meat filling," is created. ¶18. In fact, the USDA requires manufacturers who prepare and sell "taco meat filling" to include at least 40% fresh meat and truthfully label their product as: "Taco Filling with Meat, Beef Taco Filling, or Taco Meat Filling." *Id.* This is intended to provide "guidance to help manufacturers and prepare products labels that are truthful and not misleading." *Id.* (quoting USDA, Food Standards and Labeling Policy Book ("Policy Book"), at 160 (May 2003)). Indeed, when Taco Bell distributes this product to its restaurants it correctly identifies (for internal purposes) the product as "Taco Meat Filling." ¶19. The label on its shipped boxes appears as follows:

BLOOD HURST & O'REARDON, LLP



However, an advertising and labeling transformation occurs before the taco meat filling is sold to its customers. Instead of honestly telling its customers what it is selling them, it deceptively advertises the taco meat filling as "beef" or "ground beef." ¶¶15, 19. Based on these allegations of deceptive advertising, plaintiff brings claims for violation of the Consumers Legal Remedies Act ("CLRA"), Cal. Civil Code §1750, *et seq.*, and the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §17200, *et seq.*, to obtain an injunction to stop Taco Bell's deceptive advertising and to require Taco Bell to conduct a corrective advertising campaign.

## III.   TACO BELL HAS NOT MET ITS BURDEN

Taco Bell argues that the complaint should be dismissed in its entirety. Only under "extraordinary" circumstances is Rule 12(b)(6) dismissal proper,

BLOOD HURST & O'REARDON, LLP

1    such as where "plaintiff can prove no set of facts entitling [him] to relief." *Cahill*
2    *v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 338 (9th Cir. 1996); *Williams*, 552 F.3d at
3    939 (reversing order dismissing UCL and CLRA false advertising claims and
4    noting the "rare situation" where dismissal of such a case is appropriate).

5         In evaluating the motion to dismiss, the court must construe the pleadings
6    in a light most favorable to the plaintiff, accepting as true all material allegations
7    and any reasonable inferences drawn therefrom. *Broam v. Bogan*, 320 F.3d
8    1023, 1028 (9th Cir. 2003); *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249
9    (9th Cir. 2007). Construing the complaint in this manner, the complaint's
10   "factual allegations must be enough to raise a right to relief above the speculative
11   level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also*
12   *Ashcroft v. Iqbal*, _ U.S. _, 129 S. Ct. 1937, 1949 (2009). "The court should
13   grant 12(b)(6) relief only if the complaint lacks either a 'cognizable legal theory'
14   or facts sufficient to support a cognizable legal theory." *Morey v. NextFoods,*
15   *Inc.*, No. 10 CV 761 JM(NLS), 2010 U.S. Dist. LEXIS 67990, at *3 (S.D. Cal.
16   June 7, 2010) (quoting *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699
17   (9th Cir. 1990)). Taco Bell has not met this burden.

18   **IV.   ARGUMENT**

19        **A.    The Complaint Meets Rule 8(a)'s Plausibility Standard**

20        Under Federal Rule of Civil Procedure 8(a), a pleading must contain a
21   "short and plain statement of the claim showing that the pleader is entitled to
22   relief." *Iqbal*, 129 S. Ct. at 1949; Fed. R. Civ. P. 8(a)(2). The complaint must
23   "give the defendant fair notice of what the claim is and the grounds upon which
24   it rests." *Twombly*, 550 U.S. at 555; *Sanchez v. Aviva Life & Annuity Co.*, No.
25   Civ. S-09-1454 FCD/DAD, 2010 U.S. Dist. LEXIS 64264, at *5 (E.D. Cal. June
26   28, 2010). "A claim has facial plausibility when the plaintiff pleads factual
27   content that allows the court to draw the reasonable inference that the defendant
28   is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.

BLOOD HURST & O'REARDON, LLP

1    Taco Bell argues that the complaint must be dismissed in its entirety
2    because the claims rest solely on the "conclusory 'belief'" that what Taco Bell
3    advertises as seasoned beef consists mostly of non-meat substances. Def's Mem.
4    at 6. Taco Bell asserts that plaintiff alleges no supporting facts for her belief
5    other than the fact that the USDA requires taco meat filling to contain at least
6    40% beef. But, says Taco Bell, this leaves open the possibility that its USDA
7    taco meat filling might have over 40% meat. Therefore, it concludes, the claims
8    for deceptive advertising are not plausible and dismissal is mandated.

9    Taco Bell is wrong for at least four reasons. First, it misconstrues
10   plaintiff's case. Plaintiff does not allege that the advertising is deceptive because
11   Taco Bell labels its beef products as containing a "majority" of beef in the filling
12   when they contain less than 50% beef (even though this is true). Rather, plaintiff
13   alleges that Taco Bell's labeling and advertisements are deceptive because a
14   reasonable consumer would believe that the "seasoned beef" or "seasoned
15   ground beef" is, in fact, beef that is seasoned and not filled with other substances.
16   ¶¶1, 12, 13. Therefore, the percentage of beef versus non-beef substances in
17   Taco Bell's taco meat filling is not "at the core of plaintiff's complaint," as Taco
18   Bell asserts. Def's Mem. at 1. More important facts relating to the plausibility
19   of plaintiff's claims are shown on the ingredients list displayed on the taco meat
20   filling containers, which on its face demonstrates the deceptiveness of Taco
21   Bell's advertising of its "seasoned beef" tacos. These above allegations alone
22   satisfy Rule 8 notice pleading.

23   Second, plaintiff alleges facts that support her allegations that the
24   "seasoned beef" in Taco Bell's beef products is something different, *i.e.*, that it is
25   of substantially lower quality than beef and consists mostly of filler and non-
26   meat substances. Taco meat filling need only contain "at least 40% meat," a fact
27   consistent with plaintiff's allegation that the taco meat filling that defendant touts
28   as "beef" consists of ingredients other than beef. ¶¶15, 18, 19.

BLOOD HURST & O'REARDON, LLP

1    Third, pointing to the list of ingredients in its taco meat filling, Taco Bell

2    argues that "beef" is listed first, "a fact entirely ***consistent*** with its comprising a

3    majority of the product." Def's Mem. at 9 (emphasis in original). The ingredient

4    list supports plaintiff's claims, not Taco Bell's. That beef is listed first only

5    means that there is more beef than there is of the next ingredient listed, not that

6    beef comprises most of the filling.

7    Fourth, Taco Bell says that the Court "should not credit" any allegations

8    based on "information and belief." Def's Mem. at 6. This is nonsense. In

9    *Sanchez*, the Eastern District rejected this very argument because defendant

10   "cites no case law to support the proposition that factual allegations plead on

11   information and belief are not entitled to the same presumption of truth as

12   allegations plead in other ways when Rule 8(a) is the applicable pleading

13   standard." 2010 U.S. Dist. LEXIS 64264 at *13-14; *see also Marolda v.*

14   *Symantec Corp.*, 672 F. Supp. 2d 992, 999 (N.D. Cal. 2009) ("Under the Rule

15   8(a) pleading standard, plaintiff may base her claims on information and

16   belief...").

17   Plaintiff has alleged facts from which the court can draw the reasonable

18   inference that the defendant is liable for deceptive advertising under the UCL and

19   CLRA. The motion to dismiss should be denied.[4]

20

21

22

23

---

24   [4]    Taco Bell's authorities are inapposite. In *Iqbal*, plaintiff's allegations
"amount to nothing more than a formulaic recitation of the elements of a
25   constitutional discrimination claim." 129 S. Ct. at 1951. In *Sandisk Corp. v. LSI
Corp.*, No. C 09-02737 WHA, 2009 U.S. Dist. LEXIS 93191, at *8-*9 (N.D.
26   Cal. Sept. 18, 2009), plaintiff alleged that LSI made false and misleading
statements but did not explain what was false or misleading. In *Bassett v.
27   Ruggles*, No. CV-F-09-528 OWW/SMS, 2009 U.S. Dist. LEXIS 83349, at *64
(E.D. Cal. Sept. 14, 2009), there were no allegations to support the conspiracy
28   claim, such as who were the parties to the conspiracy, when it occurred, or who
agreed to breach the fiduciary duties.

BLOOD HURST & O'REARDON, LLP

**B.     The Complaint Satisfies Rule 9, to the Extent Applicable**

**1.     Rule 9 Does Not Apply**

Ms. Obney's UCL and CLRA false advertising claims are "distinct from common law fraud." *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009). "A [common law] fraudulent deception must be actually false, known to be false by the perpetrator and reasonably relied upon by a victim who incurs damages. None of these elements are required to state a claim … under the UCL." *Id.*; *see also Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 332 (1998) ("[T]he term 'fraudulent' as used in the [UCL] does not refer to the common law tort of fraud but only requires a showing members of the public "'are likely to be deceived.'"); *Williams*, 552 F.3d at 938 ("The California Supreme Court has recognized 'that [] [the UCL and CLRA] prohibit not only advertising which is false, but also advertising which ... has a capacity, likelihood or tendency to deceive or confuse the public.'"). "This distinction [from common law] fraud reflects the UCL's focus on the defendant's conduct, rather than the plaintiff's damages, in service of the statute's larger purpose of protecting the general public against unscrupulous business practices." *Tobacco II*, 46 Cal. 4th at 312. For example, in *Johns v. Bayer Corp.*, No. 09CV1935 DMS(JMA), 2010 U.S. Dist. LEXIS 10926, at *13-*14 (S.D. Cal. Feb. 9, 2010), the court held that false advertising claims under the UCL and CLRA were not "grounded in fraud" because plaintiff did not allege ***all*** of the elements of fraud, and therefore, Rule 9 did not apply.

Ms. Obney's UCL and CLRA deceptive advertising claims are not grounded in fraud. She does not allege and need not allege intent to deceive, class-wide reliance nor class-wide damages. In fact, she does not seek damages, but only injunctive relief and corrective advertising. Rule 9 does not apply.

BLOOD HURST & O'REARDON, LLP

00028763

## 2.    Regardless, the Complaint Meets Rule 9(b) Particularity

Even where Rule 9(b) pleading standards are applied, the particularity requirement must be read in harmony with Rule 8's requirement of a "short and plain" statement of the claim. *Spiegler v. Home Depot U.S.A., Inc.*, 552 F. Supp. 2d 1036, 1044 (C.D. Cal. 2008); *Sanderson v. HCA–The Healthcare Co.*, 447 F.3d 873, 876 (6th Cir. 2006). Rule 9(b) only requires that allegations regarding the circumstances constituting the fraud be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001); *Warshaw v. Xoma Corp.*, 74 F.3d 955, 960 (9th Cir. 1996) ("[A] pleading is sufficient under Rule 9(b) if it identifies the circumstances of the alleged fraud so that the defendant can prepare an adequate answer."); *Peviani v. Natural Balance, Inc.*, No. 10-CV-2451-H (BGS), 2011 U.S. Dist. LEXIS 18110, at *8-*9 (S.D. Cal. Feb. 24, 2011) ("The plaintiff must set forth what is false or misleading about a statement, and why it is false.").

Taco Bell asserts that allegations based on information and belief usually do not meet Rule 9(b)'s particularity requirement. Def's Mem. at 10. Taco Bell is wrong.

The Ninth Circuit recently reiterated the established rule that "information and belief" allegations are sufficiently particular under Rule 9(b), if "they accompany a statement of facts on which the belief is founded." *Shroyer v. New Cingular Wireless Servs., Inc.*, 606 F.3d 658, 665 (9th Cir. 2010) (citing *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989)). In *Shroyer*, the Ninth Circuit held that fraud was "pleaded with particularity sufficient to allow New Cingular to prepare an answer" because the allegations "concern a relatively definite time frame" and plaintiff "explains exactly what it is that he believes constituted the fraudulent statements:..." 606 F.3d at 665.

BLOOD HURST & O'REARDON, LLP

1    Similarly, in *Fed. Sav. & Loan Ins. Corp. v. Musacchio*, 695 F. Supp. 1053,

2    1059-60 (N.D. Cal. 1988), the court rejected defendant's contention that much of

3    the complaint was founded on information and belief and therefore lacked Rule

4    9(b) particularity.  "Rule 9(b) exists not to erect rigid pleading barriers, but to

5    provide the defendant with fair notice of the plaintiff's claims, and to ensure that

6    the complaint is based on a reasonable belief that a wrong has been committed."

7    *Id.* at 1060.

8          Here, the complaint gives fair notice of the alleged false advertising.  Taco

9    Bell knows the exact representations at issue (the complaint even reproduces

10   Taco Bell advertisements), where they were made and by whom (¶¶13-14 "on its

11   website" and in its "television commercials, restaurant menus and print

12   advertisements"), and that the false advertising is ongoing (¶36).  The complaint

13   also explains why the advertisements are likely to deceive a reasonable

14   consumer.  ¶1 ("Rather than beef, these food items are actually made with a

15   substance known as 'taco meat filling.'  Taco meat filling mostly consists of

16   binders and fillers and other non-meat substances.  Taco meat filling is not

17   beef."); ¶11 ("Taco Bell uniformly misrepresents ... that the 'beef' Products

18   contain 'seasoned ground beef,' rather than 'taco meat filling.'"); ¶16 ("Taco

19   Bell's definition of 'seasoned beef' does not conform to consumers' reasonable

20   expectation or ordinary meaning of seasoned beef, which is beef and

21   seasonings.").

22         These allegations readily meet Rule 9(b).  *See e.g.*, *Von Koenig v. Snapple*

23   *Beverage Corp.*, 713 F. Supp. 2d 1066, 1077 (E.D. Cal. 2010) (plaintiff satisfied

24   Rule 9(b) pleading where plaintiff submitted examples of the product labeling

25   and provided explanations of its deceptiveness); *Peviani*, 2011 U.S. Dist. LEXIS

26   18110 at *8 (Rule 9(b) satisfied where complaint provided pictures of the label,

27   identified the statements challenged and explained why the statements were

28   deceptive); *Chacanaca v. The Quaker Oats Co.*, No. C 10-0502 RS, 2010 U.S.

BLOOD HURST & O'REARDON, LLP

1   Dist. LEXIS 111981, at *39-*40 (N.D. Cal. Oct. 14, 2010) (Rule 9(b) satisfied

2   where plaintiff identified the statements that were misleading, the basis for the

3   contention and that those statements appeared on the product label); *Kowalsky v.*

4   *Hewlett-Packard Co.*, No. 10-CV-02176-LHK, 2010 U.S. Dist. LEXIS 131711,

5   at *9 (N.D. Cal. Dec. 13, 2010) (Rule 9(b) satisfied where plaintiff alleged he

6   was exposed to the false statements on defendant's website, even though the

7   website address was not provided); *Morgan v. AT&T Wireless Servs., Inc.*, 177

8   Cal. App. 4th 1235, 1262 (2009) (fraud alleged with sufficient particularity

9   where complaint quoted the advertisements and explained why they were

10  misleading).

11      Taco Bell next argues that even though Ms. Obney alleges that she

12  purchased Taco Bell beef products in reliance on its advertisements and in belief

13  that she was buying seasoned beef (¶5), these allegations are insufficient. It

14  complains that plaintiff does not allege whether she bought tacos, burritos or

15  both; does not provide the addresses of the stores she bought from; and does not

16  identify the exact advertising she was exposed to and relied upon. Def's Mem. at

17  10.

18      Ms. Obney need not plead the particular advertisements or statements she

19  relied on "when the unfair practice is a fraudulent advertising campaign."

20  *Tobacco II*, 46 Cal. 4th at 327-328; *see also Morgan*, 177 Cal. App. 4th at 1258

21  ("Plaintiffs were not required, as AT&T asserts, to plead the specific

22  advertisements or representations they relied upon in making their decisions to

23  purchase the [product]."); *Comm. on Children's Television, Inc. v. Gen. Foods*

24  *Corp.*, 35 Cal. 3d 197, 218-19 (1983) (same). As to "tacos or burritos," the

25  allegations are the same – Taco Bell fills all of its "beef" foods with taco meat

26  filling but advertises that the food is filled with "seasoned beef." ¶¶7-11. The

27  address of a particular restaurant is irrelevant to the claim. Taco Bell engages in

28  a   uniform   advertising   campaign,   making   the   same   misrepresentations

1    everywhere. ¶¶12-14. The representations do not vary by restaurant. The UCL

2    and CLRA causes of action are properly plead with sufficient particularity.

3        Taco Bell's motion with regard to Rule 9(b) should be denied.

4    **C.   Taco Bell Does Not Sell "Beef" or "Ground Beef" as Defined by the USDA  Or Anyone Else**

5        Taco Bell next contends that because it is not subject to the USDA's

6    ***inspection*** requirements, it does not need to comply with any USDA standards

7    for labeling and marketing to consumers.[5]  *See* Def's Mem. at 11 (citing 21

8    U.S.C. §661(c)(2) and 9 C.F.R. §303.1(d)(1)).

9        Violation of USDA inspection requirements are not alleged in the

10   complaint and are therefore inapposite.[6]  However, the USDA's definitions of

11   "beef" and "ground beef" do provide a definition that can be applied here. ¶¶15,

12   17; *see also Foodcomm Int'l v. United States*, 914 F. Supp. 548, 553 (Ct. Int'l

13   Trade 1995) (looking to the USDA's definition of "beef" as guidance to

14   determine whether product was "beef" for purposes of tariff); *N. Am. Processing*

15   *Co. v. United States*, 56 F. Supp. 2d 1174, 1181 (Ct. Int'l Trade 1999) ("While

16   the USDA's regulations are not controlling, the Court finds the USDA's

17   definition of "meat" persuasive.").

18       Here, the USDA definition of beef is one definition that can be used to

19   measure the falsity of Taco Bell's advertising.  The USDA defines "beef" as

20   "flesh of cattle" (¶11 (citing 7 C.F.R. §1260.119)) and "ground beef" as

21   consisting of "chopped fresh and/or frozen beef with or without seasoning and

---

[5]    Citing 9 C.F.R. §§317.400(b) and 381.500(b), Taco Bell also contends that restaurants are generally not subject to labeling requirements. Def's Mem. at 11. However, these regulations are inapposite as they relate to nutritional labeling not at issue in this case.

[6]    Notably, even those businesses exempt from inspection requirements are required to follow the "adulteration and misbranding provisions" set out by the USDA. *See* 9 C.F.R. §303.1(f) ("The adulteration and misbranding provisions of the Act and the regulations of this subchapter, other than the requirement of the official inspection legend, apply to articles which are exempted from inspection or not required to be inspected under this section.").

BLOOD HURST & O'REARDON, LLP

1    without the addition of beef fat [or] ... added water, phosphates, binders, or

2    extenders." ¶12 (citing 9 C.F.R. §319.15(a)). Although Taco Bell represents

3    that its products are filled with "beef," its stores never receive "beef" or "ground

4    beef." Rather, Taco Bell uses "taco meat filling." ¶19. "Taco meat filling" or

5    "taco filling" is a term of art used by the USDA to distinguish from other types

6    of meat products and is required to be labeled as such. *See* Policy Book, at 160

7    (requiring "taco filling" to be labeled to show the "true product name, e.g., 'Taco

8    Filling with Meat,' 'Beef Taco Filling,' or 'Taco Meat Filling.'"); Def's Mem. at

9    2 (conceding that Taco Bell's suppliers are subject to labeling requirements).

10   Thus, by Taco Bell's own admission, it does not use "beef" or "ground beef" as

11   defined by the USDA in its products. Tellingly, the USDA's definition of

12   "ground beef" is more lax than many other definitions, yet Taco Bell appears to

13   concede that it cannot even meet this low standard. Plaintiff uses this definition

14   and these facts to support her allegation that Taco Bell's use of the term

15   "seasoned beef" constitutes deceptive advertising under California's consumer

16   protection and false advertising laws. ¶16.

17        Moreover, no cause of action would be dismissed by Taco Bell's challenge

18   to the applicability of certain USDA regulations. Plaintiff alleges violations of

19   other prongs of the UCL (unfair, "fraudulent" and false advertising) in addition

20   to the unlawful prong. She also alleges numerous other predicate unlawful acts

21   by Taco Bell in violation of the UCL's "unlawful" prong, which Taco Bell

22   implicitly concedes apply to it, including violation of California's Health &

23   Safety Code ("H&S"). ¶35; *see e.g.*, H&S §110395 ("It is unlawful for any

24   person to ... sell ... or offer for sale any food ... that is falsely advertised."); *Id.*

25   §110398 ("It is unlawful for any person to advertise any food ... that is

26   adulterated or misbranded."); *Id.* §110660 ("Any food is misbranded if its

27   labeling is false or misleading in any particular."). Therefore, the cause of action

28   for violation of the UCL stands. *Morgan,* 177 Cal. App. 4th at 1253 ("a business

1   practice need only meet one of the three criteria ["unlawful," "unfair" or

2   "fraudulent"] to be considered unfair competition" in violation of the UCL).

3      Finally, Taco Bell never challenges the UCL's "unfair" prong which

4   prohibits, among other things, a business practice that "violates established

5   public policy." *McKell v. Washington Mutual, Inc.,* 142 Cal. App. 4th 1457,

6   1473 (2006). It is established public policy and "essential in the public interest"

7   that "meat and meat food products distributed to [] [consumers]" are "properly

8   marked, labeled and packaged." "[M]isbranded meat or meat food products

9   impair the effective regulation of [such products] ... and are injurious to the

10  public welfare, destroy markets for ... properly labeled and packaged meat and

11  meat food products, and result in ... injury to consumers." 21 U.S.C. §602; *see*

12  *also* Cal. Food & Agric. Code §18691 (incorporating 21 U.S.C. §602). Taco

13  Bell violates the UCL's "unfair" prong by advertising that its taco meat filling is

14  "seasoned beef." It is fine to sell its taco meat filling products, but not fine to

15  falsely advertise them as something they are not.

16  **V.    CONCLUSION**

17     For the foregoing reasons, Taco Bell's motion should be denied in its

18  entirety. If, however, the Court dismisses any portion of the complaint, plaintiff

19  requests leave to amend. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048,

20  1052 (9th Cir. 2003) (the policy in favor of permitting amendment is "to be

21  applied with extreme liberality.").

22     Respectfully submitted,

23  Dated: April 4, 2011                    BLOOD HURST & O'REARDON, LLP
                                            TIMOTHY G. BLOOD (149343)
24                                          LESLIE E. HURST (178432)
                                            THOMAS J. O'REARDON II (247952)
25

26

27                                          By:      s/Timothy G. Blood
                                                  TIMOTHY G. BLOOD
28

BLOOD HURST & O'REARDON, LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

600 B Street, Suite 1550
San Diego, CA 92101
Telephone: (619) 338-1100
Facsimile: (619) 338-1101
tblood@bholaw.com
lhurst@bholaw.com
toreardon@bholaw.com

BEASLEY, ALLEN, CROW,
   METHVIN, PORTIS & MILES, P.C.
W. DANIEL MILES, III
   (admitted *Pro Hac Vice*)
WILLIAM E. HOPKINS, JR.
   (admitted *Pro Hac Vice*)
218 Commerce Street
Post Office Box 4160
Montgomery, AL 36104
Telephone: (334) 269-2343
Facsimile:  (334) 954-7555
Dee.Miles@BeasleyAllen.com
Bill.Hopkins@BeasleyAllen.com

Attorneys for Plaintiff

BLOOD HURST & O'REARDON, LLP

16

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BLOOD HURST & O'REARDON, LLP

## CERTIFICATE OF SERVICE

I hereby certify that on April 4, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on April 4, 2011.

s/Timothy G. Blood
TIMOTHY G. BLOOD

BLOOD HURST & O'REARDON, LLP
600 B Street, Suite 1550
San Diego, CA  92101
Telephone: (619) 338-1100
Facsimile (619) 338-1101
tblood@bholaw.com